# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| BONITA BROWN DAVIS, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Case No.:  2:12-CV-00675-RDP |
| | } | |
| PUBLIX SUPERMARKETS, INC., | } | |
| | } | |
| Defendant. | } | |

## MEMORANDUM OPINION

This case is before the court on Defendant's Motion for Summary Judgment (Doc. #30), filed on July 16, 2013.  The Motion (Doc. #30) has been fully briefed.  (Docs. #31, #35, #37).  For the reasons outlined below, the Motion (Doc. #30) is due to be granted.

## I.      Procedural History

Plaintiff Bonita Brown Davis ("Plaintiff" or "Davis") initiated this lawsuit by filing an Application Under Section 706(f) of the Civil Rights Acts of 1964 (Doc. #1) on February 27, 2012.  Plaintiff then filed an Amended Complaint (Doc. #3) on March 30, 2012, and Defendant Publix Supermarkets, Inc. ("Publix") responded by filing an Answer (Doc. #8) on July 26, 2012.  On July 16, 2013, Defendant filed a Motion for Summary Judgment (Doc. #30), along with a Supporting Brief (Doc. #31) and Evidentiary Submissions (Doc. #32).   Plaintiff filed her Response (Doc. #35) on August 30, 2013,[1] and Defendant filed its Reply (Doc. #37) on September 11, 2013, rendering Defendant's Motion (Doc. #30) properly under submission.

---

[1] Defendant takes issue with Plaintiff's Response (Doc. #35), particularly the portion entitled "Declaration in Support of Opposition to Motion for Summary Judgment." (Doc. #35 at 65-67).  Arguing that the "Declaration" impermissibly raises new claims and allegations, Defendant seeks to have the section removed from the record by way of a Motion to Strike (Doc. #36).  However, because the court reaches the same conclusion regarding

## II.     Facts[2]

Plaintiff, an African-American female, was born on October 14, 1959. (Doc. #32, Ex. G; Doc. #32, Ex. B at 58).  She began working at Publix as a part-time cashier in November 2008, with the understanding that she was available to work full time. (Doc. #32, Ex. B at 95; Doc. #32, Ex. G; Doc. #32, Ex. B at 119).  After being encouraged by a fellow employee to pursue a position in Publix's customer service department, Davis filled out a Registration of Interest form ("ROI") on January 20, 2009, wherein she indicated her interest in becoming a member of the "Customer Service Staff." (Doc. #32, Ex. B at 75; Doc. #32, Ex. C).[3]  In early March 2009, Davis began customer service training, a process that lasted "a couple of weeks." (Doc. #32, Ex. B at 53, 54).  Upon completion of her training in late March 2009, Davis worked exclusively in Publix's customer service department, but did so while still being classified as a part-time cashier. (Doc. #32, Ex. B at 54, 93).

On April 25, 2009, Mark Ledbetter, a Caucasian male, was hired by Publix as a full-time, customer service staffer. (Doc. #32, Ex. D at 3).  At the time of his hiring, Ledbetter had over eleven years of experience in the grocery business, including time spent in a managerial position.

---

Defendant's Motion for Summary Judgment (Doc. #30) even when taking into account Plaintiff's disputed allegations, Defendant's Motion to Strike (Doc. #36) is rendered moot and is due to be administratively terminated.

[2] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[3] In order to be considered for transfer or promotion, Publix employees must have an active ROI on file. (Doc. #3 at ¶ 10).  An ROI remains active for six months, at the end of which a new ROI must be submitted in order for an employee to remain under consideration for transfer or promotion. (Doc. #32, Ex. C).

(*Id*. at 2).  Ledbetter's hiring was motivated, in part, by a prior professional relationship with Casey Rexrode, then the customer service manager at Publix.[4]

In July 2009, Davis was hospitalized after falling ill, and remained on medical leave until October 2009. (Doc. #32, Ex. B at 54, 55, 96).  When she returned to work in October 2009, Davis informed Publix that she was only available to work on a part-time basis, and resumed her work in customer service. (Doc. #32, Ex. B at 96, 97).  On September 23, 2010, Davis completed her second and final ROI, after which she was re-classified as a part-time member of the customer service staff. (Doc. #32, Ex. B at 93).  Davis broke her ankle in January 2011, which caused her to be placed on disability leave until July 2011, when her leave ran out and she left her employment with Publix. (Doc. #32, Ex. B at 21, 22, 47).  During her period of leave, specifically on April 20, 2011, Davis filed a Charge of Discrimination with the EEOC, alleging that she had been "discriminated against and denied a full-time position [on the customer service staff] because of [her] race." (Doc. #32, Ex. G).

## III.    Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment always bears the initial responsibility of

---

[4] Plaintiff's Deposition:

> Q:  [D]idn't Mr. Rexrode also tell you that he wanted to hire [Ledbetter] because Food World [had] closed and that Mr. Ledbetter had, in fact, given him his first job, and he wanted to return the favor?
> A:  He did.
> Q:  Do you have any reason to believe that wasn't true?
> A:  No.

Doc. #32, Ex. B at 144.

informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

If the moving party bears the burden of proof at trial, it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact (*i.e.*, facts that would entitle it to a directed verdict if not controverted at trial). *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method,

4

the nonmoving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the nonmoving party on the issue in question. This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial, but does not require evidence negating the nonmovant's claim; it simply requires the movant to show that there is an absence of evidence to support the nonmoving party's case. *Fitzpatrick*, 2 F.3d at 1115-16.

If the movant meets its initial burden by using this second method, the nonmoving party may either rely on evidence in the record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence that is sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## IV. Discussion

After careful review of the Rule 56 record and the parties' briefs, and for the reasons stated below, the court concludes that Defendant's motion should be granted in full.

### A. Overview of Defendant's Arguments in Support of Summary Judgment

Plaintiff's Amended Complaint (Doc. #3) pleads two counts: 1) racial discrimination in violation of Section 1981 (Count I), and 2) racial discrimination in violation of Title VII of the Civil Rights Act of 1964 (Count II). The factual basis for her claims of racial discrimination

relates to Plaintiff's allegation that she was repeatedly passed over for promotion from part-time cashier to full-time customer service associate in favor of three Caucasian individuals (namely Mark Ledbetter, Rhonda Richardson, and Valerie Bates), despite the fact that she was effectively already doing the job of a customer service associate. (Doc. #3 at ¶¶ 11-14).

Defendant's Motion for Summary Judgment (Doc. #30) seeks judgment as to both of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 56.  Indeed, in its Brief in Support of its Motion for Summary Judgment (Doc. #31), Defendant argues that 1) Plaintiff's Title VII claim is due to be dismissed as a result of Plaintiff's failure to timely file a Charge of Discrimination with the EEOC, and 2) it is entitled to judgment as a matter of law as to Plaintiff's claims under both Title VII and Section 1981, because Plaintiff is incapable of establishing a *prima facie*, Section 1981 case of racial discrimination.  Defendant's arguments are addressed below.

**B.  Plaintiff Did Not File Her EEOC Charge of Discrimination in a Timely Manner**

"In order to file a claim for discrimination under Title VII, [a] plaintiff must first exhaust [her] administrative remedies, beginning with the filing of a charge of discrimination with the EEOC." *Jordan v. City of Montgomery*, 283 Fed. Appx. 766, 767 (11th Cir. 2008) (citing *Wilkerson v. Grinell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001)).  Because Alabama is a non-deferral state, an EEOC charge is only timely if it is filed within 180 days of the last act of alleged discrimination. *Ledbetter v. Goodyear Tire and Rubber Co., Inc.*, 421 F.3d 1169, 1178 (11th Cir. 2005); 42 U.S.C. § 2000e-5(e).  "Failure to file a timely charge with the EEOC results in a bar of the claims contained in the untimely charge." *Rizo v. Alabama Department of Human Resources*, 228 Fed. Appx. 832, 835 (11th Cir. 2007) (citing *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000)).

Here, Davis filed her Charge of Discrimination with the EEOC on April 20, 2011. (Doc. #32, Ex. G).  Although in her Charge Davis asserts that she was subjected to discrimination between March 1, 2011 and April 1, 2011 (Doc. #32, Ex. G), she has repeatedly testified that the racial discrimination she alleges *actually* took place between March 2009 and July 2009. (Doc. #32, Ex. B at 53-55, 130).  That latter timeline makes sense, because the gist of Davis's discrimination claims is that, as a result of her race, she was not promoted from part-time cashier to full-time customer service associate, and the only time period in which she admittedly sought (or was available to seek) such a promotion was between March 2009 and July 2009. (*Id*. at 53-56).  Because the last instance of alleged discrimination occurred in July 2009,[5] Davis's April 2011 Charge of Discrimination was clearly filed outside of the 180-day period prescribed by Title VII, rendering it untimely.  As a result, Davis is precluded from bringing a Title VII action, and her claim under that statute is due to be dismissed.

### C.    Defendant is Entitled to Summary Judgment on the Merits of Plaintiff's Section 1981 and Title VII Claims

Absent direct evidence of racial discrimination (of which there is none in the Rule 56 record),[6] Section 1981 claims are evaluated according to the burden-shifting framework

---

[5] Plaintiff's Deposition:

> Q:  Okay.  And the latest discrimination would have been when?
> A:  Through the time period.  Would had –I would say July.
> Q:  Of 2009?
> A:   Of 2009.  Because that was the last—July 14th was the last day that I worked before being hospitalized.  I returned back to work in October, '09.  My first day at work is when I took myself from a full-time workload to a part-time workload because of my health.

Doc. #32, Ex. B at 54-55.

[6] Plaintiff's Deposition:

> Q:  Do you—do you have—what proof do you have [that your failure to be promoted] was based on the fact you're an African-American woman?
> A:  Other than the fact that it was done, no.

developed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009).[7]  Under this analytical structure, a plaintiff meets her initial burden by establishing a *prima facie* case of racial discrimination, which consists of showing that (1) she belongs to a racial minority, (2) she suffered an adverse job action, (3) her employer treated similarly situated employees outside of her classification in a more favorable manner, and (4) she was qualified for the job in question. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  "[I]f the plaintiff successfully demonstrates a *prima facie* case, the burden then shifts to the employer to produce evidence that its action was taken for a legitimate, non-discriminatory reason." *Dickinson v. Springhill Hospitals, Inc.*, 187 Fed. Appx. 937, 939 (11th Cir. 2006).  The employer's burden is "exceedingly light." *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994).  "If the employer satisfies its burden by articulating one or more reasons, then the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination." *Wilson v. B/E Aeorospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004).

Davis claims that she was subjected to racial discrimination in violation of Section 1981, specifically alleging that she was repeatedly passed over for promotion from part-time cashier to full-time customer service associate in favor of three Caucasian individuals. (Doc. #3 at ¶¶ 11-

---

Doc. #32, Ex. B at 245.

[7] Even though *McDonnell Douglas* explicitly addresses a Title VII claim, it and its progeny apply with equal force to claims maintained pursuant to Section 1981. *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) ("Both [Title VII and Section 1981] have the same requirements of proof and use the same analytical framework [*McDonnell-Douglas*], therefore we shall explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well.").

14).  As will be highlighted below, Plaintiff's Section 1981 claim falters at multiple levels of the *McDonnell Douglas* framework.[8]

> **1.   Plaintiff is Unable to Establish a Prima Facie Case of Racial Discrimination Under Section 1981 Due to the Absence of a Suitable Comparator**

Here, Davis clearly satisfies three of the four *prima facie* requirements for a claim of racial discrimination: she is a member of a protected class (African-American), she suffered an adverse employment action (repeatedly being passed over for promotion), and she was qualified for the job she sought (her day-to-day duties were identical to those of a customer service associate, the position to which she wished to be promoted).  However, Davis has yet to show (and the Rule 56 record contains no evidence to suggest otherwise) that she was treated less favorably than similarly situated persons outside her protected group by Publix.

 "To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that [she] and the employees are similarly situated *in all relevant aspects*." *Holifield*, 115 F.3d at 1562 (emphasis added).  Indeed, '[i]n a comparator analysis, the plaintiff is matched with a person or persons who have very similar job-related characteristics and who are in a similar situation to determine if the plaintiff has been treated differently than others who are similar to [her]." *Cooper v. Southern Company*, 390 F.3d 695, 735-36 (11th Cir. 2004) (quotation, citation, and emphasis omitted).  "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Holifield*, 115 F.3d at 1562 (emphasis omitted).

Davis's Amended Complaint seems to suggest the existence of three comparators in the present case (*i.e.*, the three Caucasian individuals—Mark Ledbetter, Rhonda Richardson, and

---

[8] This same analysis explains why Plaintiff's Title VII claim is not only time-barred but also fails on the merits.

Valerie Bates—who were hired as full-time customer service staffers while Davis was interested in obtaining such a position). (Doc. #3 at ¶12).  Nevertheless, subsequent discovery has revealed that only one of the identified individuals, Mark Ledbetter, is remotely capable of being classified as "similarly situated."   Indeed, Davis admitted at deposition that neither Rhonda Richardson nor Valerie Bates were suitable comparators, as Richardson was hired to the customer service staff prior to Davis's employment at Publix (and before Davis sought promotion) and Bates joined the customer service staff in 2010, when Davis was no longer interested in a full-time position. (Doc. #32, Ex. B at 152-53).[9]

Despite Davis's assertions to the contrary, she and Mark Ledbetter are not "similarly situated" for purposes of establishing a *prima facie* case.  As noted above, employees are only "similarly situated" if they are "nearly identical" to one another "in all relevant aspects." *Wilson*, 376 F.3d at 1091; *Holifield*, 115 F.3d at 1562.  Here, Davis and Ledbetter are distinguished by significant postural and factual differences, and thus lack the homogeneity necessary to be viewed as similarly situated.   Indeed, Davis and Ledbetter pursued the full-time, customer service position from different starting points, she as a current employee seeking a promotion and he as an outside applicant.  For instance, had both been part-time employees looking to be promoted to a full-time position, a comparator analysis may have been more appropriate.

---

[9] Responding to a line of questioning regarding the accuracy of her Amended Complaint, Davis herself conceded that only Mark Ledbetter was a possible comparator:

> A:  [I]n Number 12, where he [her former lawyer] says, during that period, customer service manager, Casey Rexrode, hired or promoted Caucasians, Rhonda Richardson, Mark Ledbetter, and Valerie Bates over me, that's not true either.  Mark Ledbetter, yes.  Rhonda Richardson was hired in customer service before my ROI.  And Valerie Bates did not come into customer service until 2010, which I had already changed my—my status as far part-time or full-time.  So when she—
> Q:  Okay.
> A:  —came into customer service, yes, I was still working in customer service, but she wasn't placed over me.

Doc. #32, Ex. B at 152.

Instead, their postural differences prevent them from being evaluated as "similarly situated." Likewise, Davis and Ledbetter are separated by a significant factual divide.  At the time of his hiring in April 2009, Ledbetter already had extensive work experience in grocery stores, having spent more than eleven years working in another Birmingham-area grocery store. (Doc. #32, Ex. D).  In contrast, Davis's grocery store experience was limited to the preceding six months at Publix. (Doc. #32, Ex. B at 50-51, 61-68).  Davis and Ledbetter's disparate job experience renders them sufficiently dissimilar that it is impossible to characterize Ledbetter as an appropriate comparator.  *See Davis v. NPC Pizza Hut*, 447 F.Supp.2d 1260, 1270 (N.D. Ala. 2006) (Proctor, J.) (identifying prior job experience as a factor in assessing a potential comparator's similarity to the plaintiff).

Accordingly, Plaintiff has failed to identify a suitable comparator, which prevents her from meeting her initial burden and entitles Defendant to summary judgment on her Section 1981 claim.

### 2.    Plaintiff is Unable to Show Pretext

Alternatively, the court concludes that even if Plaintiff were able to establish a *prima facie* case (which she cannot), her Title VII and Section 1981 claims nevertheless fails because she is unable to show pretext in Publix's decision to hire Mark Ledbetter as a full-time member of the customer service staff.  "[T]o avoid summary judgment [the plaintiff] must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993) (citations omitted).  A reason is not pretext for discrimination "unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993).  In the context of challenging a promotion:

> [A] plaintiff cannot prove pretext by simply arguing or even by
> showing that [she] was better qualified than the [applicant] who
> received the position [she] coveted.  A plaintiff must show not
> merely that the defendant's employment decisions were mistaken
> but that they were in fact motivated by race.  We have explained, a
> plaintiff may not establish that an employer's proffered reason is
> pretextual merely by questioning the wisdom of the employer's
> reasons, at least not where . . . the reason is one that might
> motivate a reasonable employer.

*Alexander v. Fulton County*, 207 F.3d 1303, 1339 (11th Cir. 2000) (internal
quotations omitted).

Here, Publix's proffered reason for hiring Ledbetter was the customer service manager's

desire to return a favor to Ledbetter. (Doc. #31 at 21).  And rather than "meet[ing] [the proffered]

reason head on and rebut[ting] it," *Chapman v. AI Transp.*, 299 F.3d 1012, 1030 (11th Cir. 2000)

(en banc) (addressing an ADEA claim), Plaintiff Davis has acquiesced to Defendant Publix's

articulated reason, testifying that she has no reason to believe that "favoritism" was not in fact

the motivating factor in Publix's hiring decision. (Doc. #32, Ex. B at 144).  Furthermore, Davis

admits that she has no evidence that Publix's choice of Ledbetter was prompted or influenced by

race. (Doc. #32, Ex. B at 245-47).

Davis's primary point in opposing summary judgment seems to be that she should have

been promoted to the position of full-time customer service staff member, because she was

already working exclusively and independently in the customer service department. (Doc. #35 at

1-2).  However, this reasoning at best points to issues of fairness, and is almost wholly divorced

from the context of race and is insufficient to show pretext.  As noted by the Eleventh Circuit in

*Damon v. Fleming Supermarkets of Florida, Inc.*, "We are not in the business of adjudging

whether employment decisions are prudent or fair.  Instead our sole concern is whether unlawful

discriminatory animus motivates a challenged decision." 196 F.3d 1354, 1361 (11th Cir. 1999).

Because Davis has offered *no* evidence to challenge Publix's contention that Mark Ledbetter was

hired as a result of his past relationship with the then-customer service manager, she is unable to meet her burden on summary judgment of demonstrating pretext in Publix's decision to hire Ledbetter over her.   Accordingly, Defendant Publix is entitled to summary judgment as to Plaintiff Davis's claim under Section 1981.

**V.      Conclusion**

For the reasons stated above, Defendant's Motion for Summary Judgment (Doc. #30) is due to be granted.   Additionally, Defendant's Motion to Strike (Doc. #36) is due to be administratively terminated.   A separate order consistent with this memorandum opinion will be entered.

**DONE** and **ORDERED** this February 3, 2014.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE